## ANNA C. MOTT V. THE CITY OF TOLEDO.

TITLE BY ADVERSE POSSESSION.

H. and M., owners of a tract of land in Toledo, prepared and duly acknowledged a plat of the same, laying out upon it certain streets and dividing the remaider into lots, presented the plat to the city council, and the same having been by that body duly accepted, had the plat recorded in the office of the county recorder, and soon thereafter sold and conveyed a portion of the land included in the plat, describing it by boundary lines, which boundaries included a section of one of the streets. The grantee entered into possession and enclosed with a fence on the boundary lines, erected a dwelling house and a barn thereon, and thereafter, for a period of more than twenty-one years, continued in the occupation of his premises, using that part of the street, so included as an incident to his house and barn for pasturage and garden purposes and entirely excluded the public therefrom, the city in the meantime making no attempt to open the street: *Held*, That his possession of that part of his purchase which was included within the street, as shown upon the plat, was such as to give him title to that part of the street by adverse possession against the city.

KING, J. (orally.)

This case was submitted to the court with that of Thomas Rowland against the city of Toledo. I shall first notice the Mott case.

This action was commenced in the court of common pleas, October 29, 1894, for the purpose, as alleged by plaintiff, of quieting her title as the owner and in possession of a strip of land fifty feet wide by two hundred and sixty-six feet long, lying southeast of Nineteeth street, and asking for an injunction enjoining the city of Toledo from entering upon the premises described and taking them and improving them for use as a street.

The petition averred that the city was about to do that, and by its council had passed a resolution having that as its purpose.

There is an answer denying the allegations of the petition, and the case was submitted to the court upon the evidence offered and an agreed statement of facts.

The property in question, with other land adjoining it, was owned by Henry W. Hicks and Richard Mott, and on February 20, 1866, they executed and acknowledged a plat that had been prepared for them of this tract of land, which they presented to the council of the city, and it was by the council duly accepted, and on March 21, 1866, was recorded in the records of plats in the office of the county recorder. The whole tract ran from Nettie street on the west to Sixteenth street on the east, which are now and were at the time of the plat opened and traveled streets, and was bounded on the north by Monroe and on the south by Washington streets, which were and are opened and traveled streets. Monroe street running through the city from the Maumee river in a westerly direction and is one of the most important streets of the city. They laid out on the plat certain streets crossing this tract from north to south, notably Seventeenth and Nineteenth streets, which were shortly opened and have been repeatedly improved by the city. They also laid out between Washington and Monroe a street called Bartlett street, which was opened from Nettie to Nineteenth street and improved by the city, and the lots abutting thereon sold off to various owners and built upon. Bartlett street from Nineteenth street east was not opened by these dedicators, nor their successors in title, nor has it been opened by the city or the public or any attempt made in that direction until July 13, 1894, when the council adopted a resolution providing for the improvement of Bartlett street from Nineteenth to Sixteenth. I may as well say here that Washington and Monroe are thoroughfares running through the city, and that the opening of Bartlett street as now proposed by the council would not benefit in the way of shortening travel or otherwise any of the owners of the property abutting on that street further west. By the plat referred to the lots laid out as fronting on Monroe extend back to Bartlett street, a distance of two hundred and twenty-one (221) feet, while the lots between Bartlett and Washington are made substantially one hundred feet in depth with an alley running parallel with Bartlett street between them, but no lots have ever been sold by the proprietors of this tract abutting on the south side of Bartlett street between Nineteenth and Sixteenth streets.

On October 25, 1866, the said owners by a warranty deed expressing a consideration of nine thousand dollars, conveyed a portion of these premises to James M. Hicks by this description: Commencing on the southerly corner of Monroe and Nineteenth streets and extending easterly along the southwest line of Monroe street, two hundred and sixty-six feet; thence southwesterly at a right angle from said last street three hundred and forty-six feet; thence northwesterly on a line parallel with Monroe street two hundred and sixty-six feet to Nineteenth street; thence northeasterly along Nineteenth street, three hundred and forty-six feet to the place of beginning on Monroe street, being in Mott's addition and comprising lots 23, 24, 25, 26, 27, 28, 36, 37 and 38 of said addition.

The lots 36, 37 and 38 abutted upon Monroe and ran back to Bartlett street. Lots 38 and 37 were each one hundred feet wide and lot 36, sixty-six feet, and these lots are 221 feet in depth. The other lots named abut on the south side of Bartlett street and run back to an alley and are from forty to sixty-six feet in width. These boundaries, it will be

observed, include the whole width of Bartlett street, extending east 266 feet from Nineteenth street and also include the lots abutting upon Bartlett street in the plat seventy-five feet from their northerly ends.

This deed, executed October 25, 1866, was recorded December 23, 1870. On July 1, 1873, James M. Hicks, the then owner of that rectangular piece of land, by his deed conveyed the same, by the same description, to Anna C. Mott, the plaintiff. This deed was recorded August 4, 1873, in the recorder's office, and since that date Anna C. Mott, plaintiff, has been the owner of all that property and so remained at the time of the commencement of this action.

In 1873, she commenced the erection of a dwelling house on this property which fronts on Monroe street, and that year and the year following erected a dwelling house and some time after erected a barn upon lots 36 and 37, the southerly line of which corresponds, very nearly at least, with the northery line of Bartlett street, but the premises described in her deed were used by her ever since she began to live there, as they had been to some extent before, by the owners of this property, as a part of the entire piece of property there. In other words, the land lying south of the three lots fronting upon Monroe street was used as adjacent and contiguous to the barn and house. It was used for pasturage of cattle and horses kept by Miss Mott, as a yard or place wherein they could be turned out, and some of the land was used for garden purposes. There was a fence built by the plaintiff along the northerly part of Bartlett street from the barn to Nineteenth street, substantially on the northerly line, and that has remained there ever since. There was also another fence on the south line of Bartlett street at the time plaintiff acquired her title, which ran back as far as this property, 266 feet. That fence was moved two or three years ago, but the property between that fence and the alley which I spoke of has always remained as a part of the premises belonging to the estate of Miss Mott. In other words, she holds her property as taken in the deed 346 feet in one direction and 266 in the other. Along Nineteenth street, between these premises and the street, there has been a fence all the time since before the execution of this plat, and it remains there now, with suitable gates for ingress and egress in and upon these premises. The facts further show that this part of these premises has been, during all the time that Miss Mott was the owner, and ever since the execution of this plat, in the possession of the owners of this property. Other facts might be cited but they would not bear upon the questions raised, and that is whether Miss Mott has acquired title to that part of Bartlett street passing through her premises by adverse possession against the city and the public. This has been very fully and ably argued by counsel on both sides, and a great many authorities have been cited, many of which we shall be unable to review.

The claim is made on the part of the plaintiff that under the law of Ohio a party may acquire title to real estate as against a municipality by adverse possession. This we do not understand to be disputed by the city, but the claim is made that the law is limited by the authorities and decisions in this state to an actual occupation by permanent improvements. In other words, that what has been said, if anything, by the courts of this state that would seem to bear a different construction must be limited to an actual occupation of the property for twenty-one years, by improvements that are designed to be permanent in their nature.

Mott v. The City of Toledo.

We are left to determine between these conflicting opinions as to what is the law in this state relating to this single question. There are many decisions which refer to it. Commencing back as far as 1838 in the 8th Ohio Reports, at page 299, is a case in which the court, by Judge Lane on page 310, very briefly stated the law of this state to be as follows:

"No case is found in the books which exempts any other description of person, whether natural or artificial, from the operation of the laws; and none of the reasons for the exemption, apply with duty of defending the interests which they are created to hold, and has conferred every power necessary to this end. When the property is their own, the statute has been always held as binding; when their land or franchises are of public character, the public which they represent are principally members of their own body; sufficiently vigilant to watch their own interests, and sufficiently powerful to defend them. The rights of the corporation, therefore, seem well enough protected without invading the letter of the statute."

That was the first case in which the court was called upon to pass upon this question. They affirmed this doctrine in a case in the 1st Ohio State, 478-510, and again in the 5th Ohio State, 594 602-3.

In the 5th Ohio State, Judge Ranney refers to the decisions in the 8th Ohio and 1st Ohio State Reports as establishing the doctrine in this state, and says in addition that they have his unqualified sanction and approval. The case in the 5th Ohio State relates to a public highway.

In the 13th Ohio State the court were again called upon to pass upon the question where it was raised, and this was an obstruction to only a portion or strip of land along one side of it which did not interfere with the public use of the street. The court in that case, on page 48, says:

"It must be borne in mind that, in the case at bar, the road was not closed up, and the public thereby excluded from any use of the street. In such case, the entire exclusion of the public would doubtless be such as ouster or disseizin, as would require a suit to be brought within the statutory period, upon the principles settled in *Lessee of the City of Cincinnati* v. *The First Presbyterian Church*, 8 Ohio Rep , 298. Nor is it like the case of *The City of Cincinnati* v. *Evans*, 5 O. St. Rep., 594, where the purpose of the possession and intended permanency were indicated by the erection within the bounds of the street, of the front of a large and costly warehouse. The erection of such a building, in such a place, was ample notice to the city authorities to his private and individual benefit of a portion of the public easement, and called for immediate and effective measures upon their part to prevent it."

I notice particularly that language where the court say in the 13th Ohio State that in the case before them there was not an entire exclusion of the public. If there had been it would doubtless be such an ouster as would require the suit to be brought within the statutory period. And saying further it was not like the case in the 5th Ohio State, where it was an encroachment, but of the character of a notice to the public of an intention to occupy. Now there are several more of these cases: 28 Ohio State, 488, is also the occupation of a strip of land on one side of a public highway, and, also, 38 O. S., 87. This was the occupation by a private individual of a lot of land it was claimed had been conveyed or patented to Oxford township for school purposes, and the court there considered the question whether an individual might acquire title by adverse possession, and say: "The remaining question, then, is whether the statute of limitations applies, assuming

that the plaintiffs, as trustees of Oxford township, acquired title to the premises, by donation from the general government in 1841 for the benefit of schools. That the '*Maxim mullum tempus occurri tregi*' is applicable to the general and state government is not denied; but it was held in *Cincinnati* v. *First Presbyterian Church*, 8 Ohio, 298, upon the fullest consideration, that the maxim did not apply where a city prosecuted an action of ejectment to recover possession of lots dedicated to public use, the defendants in the action having been in the adverse possession of the lots for more than twenty-one years. I am aware that cases may be found in opposition to that decision. Several of them are collected in a note to the case as reported in 32 Amer. Dec., 718, 721. But that decision has been repeatedly approved in this court, and, as applied to a case like the one under consideration, it is amply supported here and elsewhere." Citing, "1 O. S., 478; 16 O. S., 11; 50 Mo., 195; 2 Dillon on Mun. Cor., sections 668, 674. As to the application of the rule to adverse possession of public ways, see *Cincinnati* v. *Evans*, 5 O. S., 594; *Fox* v. *Hart*, 11 Ohio, 414; *Lane* v. *Kennedy*, 13 O. S., 542; *McClellana* v. *Miller*, 28 O. S., 488; *Railroad* v. *Commissioners*, 31 O. S., 336."

There is a case in the 52 Ohio State, page 460, which follows out the established line of these decisions.

"The right of an adjacent land holder to inclose by a fence, however constructed, a portion of a public highway can not be acquired by adverse possession, however long continued."

And the court say, on page 467 "More recent cases place the right of the public as against encroachments on its highways, however long continued, on the ground that they are public nuisances in favor of which the statute of limitations does not run."

Recently there was a case before the circuit court in the second circuit, 3 C. D., 386, and Judge Shearer in announcing the decision of the court has this to say, having discussed one of the claims made which might have been decisive of the case. He adds: "That, if the views above stated are wrong, it is clear that the plaintiffs must fail upon another ground, namely, that Taylor's title is established by adverse possession. After Ramsey's dedication, which was in 1856, he remained in said adverse possession until the year 1860; and although the city had accepted the grant, by ordinance, it did not, nor did it ever take possession of said streets, etc. In 1860 Ramsey conveyed his title to all said lots, and his grantees and said Taylor's have been in the possession thereof ever since, and until within two years, kept the same enclosed, used them for pasturage, and treated the same as their own, without objection on the part of the city or of said plaintiffs. No steps were ever taken by plaintiffs, or those under whom they claim, to terminate such use and occupation, or to enforce the trust created by the dedication, or to prevent the ripening of Taylor's title. They stood by and acquiesced in the open, notorious, continuous, peaceable and exclusive possession of the occupants. And as the statute began to run as early as 1860, and continued to run without interruption until this action was brought in 1890, the Taylors have acquired a valid title to said property."

The case is referred to by the supreme court in deciding two other cases, which are affirmed on its authority, 51 O. S., 593.

We assume that the decision by the circuit court is approved on both points decided, and that the supreme court in affirming the other judgments affirmed them upon the second ground as well as upon the first. If that be so the case in the second circuit court, as far

as possession is concerned, is like the one before us, as the lots were fenced in and used for pasture. There is some evidence here to show that some of the time plaintiff used a portion of this land for garden purposes and it was a use incident to the occupation of the balance of the property by the person who owned it. The case in the second circuit court is no stronger, so far as possession is concerned than the one before us. It has in it the same element as that here, having been dedicated for public purposes, as evidenced by a plat which was shortly after accepted and recorded and the title thereto vested in the city for street purposes merely, and in effect that dedication was repudiated by making a deed therefor and conveying it to another. So far as this defendant or this property is concerned, such conveyance by the dedicators is an act which should be notice to anyone who thereafter acquired or claimed rights in this property, to the effect that they did not propose to recognize the dedication any further.

The grantors described this land by metes and bounds, which govern; giving the length of each line and the location, "being in Mott's addition, and comprising lots numbered 23, 24, 25, 26, 27, 28, 36, 37 and 38." The word "comprising" is used to mean "embracing" or "including;" including these lots and the street as well. The grantee purchased them and paid for them and entered into possession under the deed which was to him color of title, and since that time has occupied those premises for all the purposes for which the occupier has any occasion to use them. Now, if there be any adverse possession against a municipal corporation, we do not see why, in a case like this, it is not made out.

The occupation by the owners of the street by taking possession of the whole, including it within the boundaries of their field and their land, using and occupying it as a part of their premises, selling and conveying it to purchasers for a valuable consideration, it seems to us a pertinent way of establishing an adverse possession.

It is not essential that there should have been a permanent building upon this street in order to establish adverse possession. The supreme court has not yet said so and we leave that for them to decide. They have held that an encroachment upon a public street by a permanent erection would establish adverse possession. They have held in one case that a worm fence and in another, a stone wall encroaching upon the street is not such an occupation as constitutes adverse possession, but where they have given any expression upon the question, they have held that the occupation of the entire street, and the exclusion of the public for all purposes for which it was dedicated, is such an occupation as will bar the rights of the public thereto, if continued for a period of twenty-one years, and we think we are bound to follow these decisions and to hold that the title to this property has been acquired by adverse possession. We hold that the plaintiff has acquired title to this property by adverse possession, which has continued the statutory length of time, and that thereby the right of the public to take possession thereof for the purpose of a street is barred.

In the Rowland case the facts are substantially the same. The Rowland property adjoins the Mott property on the east and is bounded by Monroe and Seventeenth streets. The dedicators conveyed their title in the two lots which comprised the Rowland property about the time of making the plat, and in their deed simply conveyed the lots by the numbers upon the plat and did not undertake, as in the Mott case, to convey any part of Bartlett street, but the owners of the two lots who have suc-

ceeded in title to those who made the plat have enclosed within their premises one-half of Bartlett street from the Mott property east to Seventeenth street. Next, south, the adjoining owners have included the other half of Bartlett street in their property, but these owners are not involved in this action, and for more than twenty-one years before the commencement of this action and before the adoption of the resolution by the city council, the owners of the Rowland property have kept it enclosed and have improved it as residence property by filling it up and raising the level somewhat above that of the streets and of surrounding property, and have effectually excluded the public from any use of that part described on the plat as Bartlett street. And we find that Rowland has an adverse possession of the strip of land twenty-five feet in width described in his petition within the definition in such cases sufficient to give him title to that strip.

We do not intend to decide now that the owner of land who dedicates it for street purposes may himself set up a title against the public claiming to hold by adverse possession, unless he shall hold by such possession of the property after the dedication, as to have made it notice to the public and to the city that he intended to hold that property against the city, and to ignore or to set aside his deed of dedication. In other words, we do not intend to hold in this case that the dedicators of this property for Bartlett street without changing the nature of the possession, might occupy it substantially as it was occupied before; and then set up title to that street by adverse possession. Whether such a possession would be adverse in Ohio, we do not undertake to decide, but we do say that a grantee who has purchased and is not bound by the deed of dedication may set up title by adverse possession if he has occupied, enclosed and used the land for the statutory length of time, and has excluded the public therefrom.

Decided March 25, 1897.

*J. Kent Hamilton*, Attorney for Anna C. Mott.

*Emory Potter*, Attorney for Thomas Rowland.

*C. W. Watts*, City Solicitor; *J. H. Tyler* and *H. S. Merrill*, Attorneys for Defendant.